**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAAS CONTRACTING, L.L.C.,<br><br>                              Plaintiff,<br>        v.<br><br>STALCO CONSTRUCTION, INC. and ABC INC. I-V, fictitious designations of unknown corporations, partnerships, sole proprietorships or other entities,<br><br>                              Defendants. | **OPINION**<br><br>Civ. No. 12-7489 (WHW) (CLW) |

**Walls, Senior District Judge**

This case arises out of a dispute between a contractor and a subcontractor engaged in a construction project for the State University of New York ("SUNY"). Defendant moves for summary judgment on Plaintiff's claims for breach of contract and unjust enrichment. The Court finds that genuine issues of material fact remain in this case, and Defendant's motion is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff TAAS Contracting, a New Jersey corporation with its principal place of business in New Jersey, brought this action against Defendant Stalco Construction, a New York corporation with its principal place of business in New York, invoking this Court's diversity jurisdiction. Compl. ECF No. 1 ¶¶ 1-4; Aff. of Dean Theodorou, ECF No. 35-2 ¶ 2. Stalco served as the general contractor for the construction of the SUNY Downstate Medical Center in Brooklyn. Def's Statement of Material Facts ("SMF"), ECF No. 30-1 ¶ 1; Pl's Resp. SMF, ECF No. 35-1 ¶ 1. On November 22, 2010, Stalco subcontracted with TAAS for the performance of certain construction services. Def's SMF ¶ 2; Pl's Resp. SMF ¶ 2; Decl. of Joseph Serpe, ECF No. 30-3, Ex. B. During the course of the project, the parties agreed to various "change orders"

that called for TAAS to provide other construction services in exchange for additional payments from Stalco. Serpe Decl. ¶ 4, Ex. C.

TAAS contends that the parties' contract was also orally modified during the project. It has submitted an affidavit of its managing member, Dean Theodorou. Theodorou Aff. ¶ 6. Theodorou certifies that he "attended a meeting with Stalco and other subcontractors in January 2012" where Stalco representative Kevin Harney made certain promises to the subcontractors working on the project. *Id.* ¶¶ 15-18. Theodorou asserts that Harney informed the subcontractors that their work needed to be completed by May 2012 and promised that they would be paid every two weeks. *Id.* Stalco denies that this meeting and oral modification ever took place. Df's Response to Counter Statement of Material Facts, ECF No. 38-1 ¶ 19.

The parties' dispute began after Stalco provided TAAS with a deficiency list on March 13, 2012, notifying it of items that were allegedly not in compliance with the project's specifications. Df's SMF ¶5. TAAS asserts that these deficiencies were caused by actions of "Stalco or other contractors at the jobsite that damaged work already completed by TAAS." Pl's Counter SMF ¶ 5. TAAS also contends that the deficiency list was made up of "standard punch-list items which are routine in all commercial construction projects" and states that it continued to perform services and receive payment from Stalco after the deficiency list was issued. *Id.*

According to Stalco, on June 18, 2012, it sent TAAS another list of items that needed to be repaired between June 20 and June 27, 2012. Df's SMF ¶ 6. TAAS denies that it was obligated to complete these services and asserts that it had not been paid by Stalco since March 31, 2012. Pl's SMF ¶¶ 6-7. Stalco asserts that it notified TAAS on June 18, 2012 that it could not release any further funds to TAAS until all work on the deficiency list had been completed. Df's SMF ¶ 7.

**NOT FOR PUBLICATION**

TAAS did not appear at the worksite on June 20, 2012. SMF ¶ 9. TAAS asserts that it concluded its services due to Stalco's continuing nonpayment. Pl's SMF ¶ 10. Stalco sent TAAS a letter on June 25, 2012 stating that TAAS had been terminated due to its alleged "decision to walk off the Project." Df's SMF ¶ 10.

TAAS also claims that, after the termination of its work on the SUNY project, it attempted to retrieve certain specialty materials that it had purchased from a company called Kuiken Brothers. Theodorou Aff. ¶ 31. Dean Theodorou declares that "Stalco's representative, Joe Fitzpatrick, refused to allow me access to the Medical Center in order to retrieve materials, supplies and equipment provided by TAAS, including the specialty ceiling panels and other Kuiken materials." *Id.* Stalco disputes TAAS's contention that it owned these materials and claims that Stalco purchased the materials directly from Kuiken. Df's Resp. Counter-SMF ¶ 28.

TAAS brings one count for breach of contract, Compl. ¶¶ 18-21, and one count for unjust enrichment against Stalco. *Id.* ¶¶ 22-29. It contends that it "performed all of the services . . . as stated in Phase One of the contract, and as modified by the parties by the agreements thereafter, without any protest, objection or complaint by [Stalco]." *Id.* ¶ 12. According to TAAS, Stalco "paid $196,114.65 to TAAS for the services which were performed at the premises, and $40,916.27 to a third party in the State of New Jersey which had provided materials and equipment," leaving an unpaid balance of $131,809.95. *Id.* ¶¶ 14-15. TAAS "departed the premises and concluded its services," allegedly because of Stalco's failure to pay this unpaid balance. *Id.* ¶ 16. Stalco moved for summary judgment on January 1, 2016. Mot. Sum. Judg. Br., ECF No. 30-2. Stalco claims that it "paid TAAS for all work it performed until TAAS failed to proceed in June 2012 following a request made by Stalco to address items that had to be repaired, replaced or completed." *Id.* at 2.

**NOT FOR PUBLICATION**

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott,* 550 U.S. at 380. At this stage, the Court's "function is not . . . to weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, and it is "inappropriate for a court to . . . make credibility determinations." *Big Apple BMW, Inc. v. BMW of North Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

DISCUSSION

**1. The Court will apply New York law to this dispute.**

The Court must first determine whether New York or New Jersey law applies to this case. "In evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state, which in this case is New Jersey." *See, e.g., Homa v. American Express Co.*, 558 F.3d 225, 227 (3d Cir. 2009) (citations omitted). Under New Jersey law, courts look to the law with the most significant relationship to the parties and issues. *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (N.J. 2008); *see also Keil v. Nat'l Westminster Bank*, 311 N.J. Super. 473, 485 (App. Div. 1998). The first step in making this decision is to determine whether an actual conflict exists by "examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." *P.V.*, 197 N.J. at 143 (quoting *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). If no conflict exists, the law of the forum state applies. *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 322 (D.N.J. 2014) (citation omitted).

Plaintiff contends that its subcontract with Stalco was modified by the oral promise made by Kevin Harney, and New York law conflicts with New Jersey law regarding the validity of subsequent oral modification to written contracts. The subcontract between TAAS and Stalco contains the following provision: "This Order Form of [sic] its conditions or provisions cannot be changed, modified, terminated, canceled or rescinded or in any other way altered or negated, except by an instrument signed in writing by both parties." Serpe Decl. Ex. B at 6; Theodorou Aff. Ex. A at 17. Under New Jersey law, in "certain circumstances, a court may conclude that the parties to a contract have modified its terms by a subsequent oral agreement, even if the contract purported to allow only written changes, and the parol evidence rule will not bar evidence of the

oral agreement." *SPJ, Inc. v. W2005/Fargo Hotels (Pool C) Realty, L.P.*, 2010 WL 4237371 at *9 (App. Div. Oct. 28, 2010) (citing *Lewis v. Travelers Ins. Co.*, 51 N.J. 244, 253 (1968)). In contrast, New York's General Obligations Law § 15-301 states that a "written agreement . . . which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought . . . ." *See Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 472, n. 23 (S.D.N.Y. 2013) (distinguishing between New Jersey law and New York law on subsequent oral modifications of written contracts). Because an actual conflict exists between the substantive laws of New York and New Jersey, the Court must apply the second step of New Jersey's choice of law analysis.

"Under the second part of the inquiry, the court must determine which jurisdiction has the 'most significant relationship' to the claim." *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 206, 207 (3d Cir. 2013) (quoting *Camp Jaycee*, 197 N.J. at 144). To make that determination, courts look to the Second Restatement of Conflict of Laws, which "provides specific guidance for resolving particular types of cases." *Camp Jaycee*, 197 N.J. at 140; see also *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 446 (D.N.J. 2012) (court "must weigh the factors set forth in the Restatement section that corresponds to Plaintiff's cause of action"). "The Second Restatement assessment takes place on an issue-by-issue basis. It is qualitative, not quantitative." *Camp Jaycee*, 197 N.J. at 143 (citations omitted). "[I]n balancing the relevant elements of the most significant relationship test," courts should "apply the law of the state that has the strongest connection to the case." *Id.* at 155.

When analyzing a contractual dispute under the Second Restatement, the "law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular

6

issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) Conflict of Laws § 187. The general contract between Stalco and SUNY included a New York choice-of-law clause and required Stalco to bind its subcontractors to the terms of the general contract. Serpe Decl., Ex. A Agreement ¶ 2.18(7); Standard Clauses ¶ 14. But there are no choice-of-law terms in the subcontract between Stalco and TAAS that the parties have submitted to the Court. *See generally*, Serpe Decl. Ex. B; Theodorou Aff. Ex. B. In the absence of an effective choice-of-law provision between the parties, the Court must consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Jackson v. Midland Funding LLC*, 468 F. App'x 123, 126-27 (3d Cir. 2012) (applying Restatement (Second) Conflicts of Laws §§ 188 and 186).

Weighing in favor of New York are the place of performance and the location of the subject matter of the contract, both of which were Brooklyn, New York. The places of incorporation and principal places of business of the parties do not weigh in favor of either jurisdiction, because Stalco is a New York company doing business in New York and TAAS is a New Jersey company doing business in New Jersey. *See* Compl. ¶¶ 1-2. TAAS argues that:

> Stalco understood that TAAS would be supplying workers and materials originating from New Jersey, that TAAS provided labor, materials, supplies and equipment which originated in New Jersey, and that Stalco sent payments for the completed services to TAAS'[s] office in New Jersey. Furthermore, the places of negotiation and contract cannot easily be identified as being in New York. Stalco sent the contract documents to TAAS in New Jersey, and TAAS signed the contract documents in New Jersey.

Opp. Br at 9. Although TAAS operated from New Jersey and signed contract documents there, the parties' contract called for services to be performed in New York for a project that took place

entirely in New York and was being handled by a New York general contractor. The Court finds that New York has the strongest and most significant connection to this dispute.

Further supporting this conclusion is Section 196 of the Second Restatement. Under Section 196, a contract for the provision of services should be determined by the local law of the state "where the contract requires that the services, or a major portion of the services, be rendered." Section 196 has not been explicitly adopted by the New Jersey Supreme Court, but the District of New Jersey has applied it in an analogous case, finding that it "believes that the New Jersey Supreme Court would, if presented with the proper action, adopt and apply it." *TekDoc Servs., LLC v. 3i-Infotech Inc.*, No. 9-cv-6573, 2013 WL 2182565 at *11 (D.N.J. May 20, 2013) (Cooper, J.). Were Section 196 to apply here, it would point to New York as the state where TAAS's services were to be performed.

Because the parties' contract is governed by New York law, New York's General Obligations Law § 15-301 barred the alleged subsequent oral modification of the contract.

### 2. Summary judgment is not warranted.

#### a. Breach of Contract

Under New York law, a breach of contract claim is sufficiently pled if a claimant alleges "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *RCN Telecom Servs., Inc. v. 202 Centre Street Realty LLC*, 156 F. App'x 349, 350-51 (2d Cir. 2005). "In interpreting a contract under New York law, words and phrases should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (quotations and alterations omitted).

**NOT FOR PUBLICATION**

Stalco asserts that TAAS's nonappearance on June 20, 2012 was a breach of the subcontract. TAAS contends that Stalco breached the subcontract before June 20 because "TAAS was not paid by Stalco for services rendered and completed, and materials provided, at the Medical Center . . . despite repeated demands for payment." Theodorou Aff. ¶¶ 24-25. According to TASS, these services for which it was not paid were the subject of both the original subcontract and written change orders. *Id.* ¶ 33. Stalco responds that "there is no basis for TAAS's claims for any amount due by Stalco." Reply at 9.

The subcontract specified conditions that had to be satisfied before Stalco was obligated to make payments to its subcontractors:

> The General contractor shall not be required, under the terms of this agreement, to make any payments to the subcontractors without having received all of the following: 1) Receipt of original lein waivers (all materials per each requisition) 1) [sic] Completion and acceptance of all work in place, for which is being involved, relative to each specific pay period. 2) Active insurance requirements completed. Insurance certificates are required PRIOR to commencement of work. 3) Receipt of payment from client 4) Timely internal processing of payment received from client in accordance to Division One of Specifications. 5) Receipt of Certified Payroll (if applicable).

Theodorou Aff. Ex. A at 27; Serpe Decl. Ex. B at 16. The subcontract also stated that "Change Order payment will follow [the] same guidelines as payment of requisitions/invoices." Serpe Decl. Ex. B at 19 ¶ 14; Theodorou Aff. Ex. A ¶ 14. Stalco contends that it "made payments to TAAS for activities performed by TAAS on the project" and that "[p]rior to the termination, Stalco paid TAAS in full in response to all properly submitted applications for payment in accordance with the terms of Stalco's purchase orders." Serpe Decl. ¶¶ 5, 11. Serpe has attached copies of the checks that Stalco did pay to TAAS and the corresponding receipts of payment. *Id.* Exs. D, E.

**NOT FOR PUBLICATION**

The evidence introduced by Stalco is sufficient to meet its initial burden. The Court next turns to evidence submitted by TAAS, which must "do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380.

TAAS has submitted the following evidence to support its contention that it was not paid for services despite demands for payment: Dean Theodorou has declared that Stalco representative Joseph Solloch "personally informed [him] and TAAS'[s] estimator, Argjent Mena, at the jobsite that TAAS was owed for the Services rendered and completed at the [medical center], including the materials supplied to and installed by TAAS, that Stalco was responsible for the payment of the Services, and that Stalco was unable to make such payments to TAAS." Theodorou Aff. ¶ 19. Theodorou has also declared that when TAAS received Stalco's deficiency list, "Stalco had not made any payment to TAAS for the Services for over [two and a half] months since . . . March 31, 2012, and repeated demands for payment, and notifications of its required cessation of any further services for non-payment, from TAAS in April 2012, May 2012, and early June 2012 were met with silence from Stalco." *Id.* ¶ 23. Additionally, in a series of emails between representatives of TAAS and Stalco, Stalco's project manager Joseph Solloch suggested that Stalco owed TAAS certain payments before June 20, 2012. Specifically, in March of 2012, Solloch and Theodorou exchanged emails about the deficiency list. On March 13, Theodorou wrote, "[o]nce again I ask that a payment be issued as we are behind payments." Ex. D at 14. Solloch responded, "The requisition that was received about a week ago is in process. I have requested [Stalco employee] Bess to issue you payment ASAP." *Id.* On March 20, TAAS employee Argjent Mena also wrote to Solloch, asking "Joe, What is the status of payment?" and Solloch wrote "I will be sitting down with Bess today to do the billing. I will work on getting you a check as soon as possible." *Id.* at 16. More than a month later, on May 30, Mena again

wrote, "Joe, Anything with reissuing this check? We are going on 60-90 days for this." *Id.* at 17. Solloch responded that "Accounting said they should have the check ready tomorrow." *Id.*

Theodorou's declaration and the emails between TAAS employees and Solloch establishes the existence of a genuine dispute as to whether Stalco made the required payments that it owed to TAAS. Although Stalco was only required to make payments under certain circumstances that were enumerated in the subcontract, *see* Theodorou Aff. Ex. A at 27; Serpe Decl. Ex. B at 16, Stalco has not conclusively shown that the payments referred to in TAAS's emails fell into one of the categories under which it was not required to make payments. On a summary judgment motion, the Court is not permitted to weigh the credibility of competing affidavits and declarations. *Big Apple BMW, Inc.*, 974 F.2d at 1363 (3d Cir. 1992). This dispute is also material. Whether Stalco made contractually-required payments to TAAS will determine whether the parties performed their obligations under the contract and whether the subcontract remained in effect on June 20, 2012, when TAAS did not appear at the construction site. Defendant is not entitled to summary judgment on Plaintiff's breach of contract claim.

### b. Unjust Enrichment

Under New York law, the "basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). Such a claim "is not available where it simply duplicates, or replaces, a conventional contract . . . claim." *Id.* Instead, it "is available only in unusual situations when, though the defendant has not breached a contract or committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* Courts have allowed unjust enrichment claims to be brought as

11

alternatives to a breach of contract claims. *E.g. Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 297 (E.D.N.Y. 2007).

A genuine issue of material fact that is potentially separate from the parties' contract dispute remains in this case. TAAS claims that, after the termination of its services, it attempted to retrieve from the construction site specialty materials that it had purchased from Kuiken, a third-party company. Theodorou Aff. ¶ 31. Dean Theodorou has declared that "Stalco's representative, Joe Fitzpatrick, refused to allow me access to the Medical Center in order to retrieve materials, supplies and equipment provided by TAAS, including the specialty ceiling panels and other Kuiken materials." *Id.* The parties dispute which company paid Kuiken for these materials. Pl's Counter-SMF ¶ 28; Df's Resp. Counter-SMF ¶ 28. Based on the record before the Court, there remains a genuine dispute as to whether Stalco retained materials belonging to TAAS after the parties' relationship was terminated. This is separate from the TAAS's contractual claim for damages resulting from uncompensated services it allegedly provided on the project. The unjust enrichment claim does more than merely duplicate the breach of contract claim and will not be dismissed.

## CONCLUSION

For the reasons discussed, the Court finds that there remain genuine disputes as to the material facts in this case. Defendant's motion for summary judgment is denied. An appropriate order follows.

Date: June 8, 2016

_____
United States Senior District Judge